**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherri Rosen,<br><br>    Plaintiff,<br><br>v.<br><br>Fasttrak Foods LLC, et al.,<br><br>    Defendants. | No. CV-19-05292-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for default judgment by Plaintiff Sherri Rosen ("Rosen") against Defendant Steve Hamilton ("Hamilton"), both as an individual and in his capacity as personal representative of the estate of Renee Gumble (the "Estate"). (Doc. 57.) For the following reasons, the motion is denied.

**BACKGROUND**

I.    <u>Factual Background</u>

The following facts are derived from Rosen's First Amended Complaint ("FAC") (Doc. 47) and, where applicable, the answer to a previous iteration of the complaint (Doc. 13).

Rosen worked as a sales manager for Defendant Fasttrak Foods LLC ("Fasttrak"), a company that sells snack foods, from January 2018 to October 2019. (Doc. 47 ¶¶ 7-8; Doc. 13 ¶ 7.) Renee Gumble ("Gumble") was the sole manager of Fasttrak until her recent death. (Doc. 47 ¶¶ 3, 5.) Hamilton was an owner of Fasttrak and is the personal representative of the Estate. (*Id*. ¶¶ 4, 6.) Hamilton was also the "General Manager" who

"exercised managerial responsibility and substantial control over the terms and work conditions of [Fasttrak's] employees." (*Id*. ¶¶ 9, 11.)

Although Fasttrak paid Rosen pursuant to an employment agreement for over one year, Fasttrak stopped paying wages to Rosen "as of June 28, 2019" and stopped paying expenses to Rosen "as of January 1, 2019." (*Id.* ¶¶ 10, 20-22.) Hamilton admitted that Rosen's wages were "earned and owing" and "made affirmative promises to pay" Rosen, but "Defendants have still failed to pay" Rosen. (*Id*. ¶ 23-28.) When she filed the complaint, Rosen was owed $20,933.32 in unpaid wages and $10,400.00 in unpaid expenses. (*Id*. ¶¶ 34-35.)

II.     Procedural History

On September 30, 2019, Rosen filed this action, naming as defendants (1) Fasttrak, (2) Hamilton, and (3) the Estate. (Doc. 1.)

On November 8, 2019, Fasttrak and Hamilton filed an answer. (Doc. 13.) The Estate also purported to join in the answer. (*Id.*)

On January 31, 2020, Rosen filed a motion for judgment on the pleadings. (Doc. 22.) The motion thereafter became fully briefed. (Docs. 25, 27.)

On July 30, 2020, defense counsel filed a motion to withdraw as attorney of record (Doc. 37), which Rosen opposed (Doc. 38).[1]

On August 19, 2020, the Court found that that, given defense counsel's allegations of Defendants' failure to "respond to their counsel's attempts to communicate," pay bills, or respond to the withdrawal motion, there was justifiable cause for defense counsel to withdraw. (Doc. 40.) In this order, the Court noted that the withdrawal request "raise[d] some logistical issues" because, of the three named Defendants, Hamilton as an individual could proceed *pro se* but Fasttrak could not. (*Id.* at 2.) The Court also noted that the Estate did not appear to be an appropriate party because, under Arizona law, an estate "has no capacity to bring or defend a lawsuit" and could only be sued through a personal representative. (*Id.* at 3, internal quotation marks omitted.) Accordingly, the Court granted

---

[1] Defense counsel's motion indicated that Defendants opposed withdrawal (Doc. 37 at 1), but Defendants never filed a response.

defense counsel's motion to withdraw, directed Fasttrak to obtain new counsel before proceeding in this action, and ordered Rosen to show cause why the Estate should not be dismissed as an inappropriate party. (*Id.*)

On August 25, 2020, notice was provided that Fasttrak had filed for bankruptcy. (Doc. 42.)

On September 2, 2020, Rosen filed a response to the Court's order to show cause in which she requested leave to amend to name the correct party (as opposed to dismissal) because she had not been able to determine the identity of the Estate's personal representative due to Defendants' lack of cooperation in discovery. (Doc. 43.) Rosen further asserted that she had "recently learned, through former opposing counsel's avow[als]," that Hamilton was the Estate's personal representative. (*Id.* at 2.)

On September 4, 2020, the Court issued an order dismissing the Estate with prejudice and ordering the parties to confer "as to whether amendment of the complaint to add an additional capacity in which Hamilton is sued can be accomplished via stipulation." (Doc. 44.) The Court permitted Rosen to file a motion for leave to amend if the parties could not agree. (*Id.*)

On September 23, 2020, Rosen moved for leave to amend to add Hamilton in his capacity as the Estate's personal representative, stating that she had "attempted to consult with [Hamilton] on four occasions, but [had] not received a response as of the date of filing." (Doc. 45.)[2]

On October 15, 2020, the Court granted Rosen's motion for leave to amend. (Doc. 46.) That same day, Rosen filed the FAC, which contains two counts but appears (as discussed in more detail below) to assert an array of different legal theories. (Doc. 47.)

On December 4, 2020, Rosen filed proof of service as to Hamilton. (Doc. 48.)[3]

---

[2] In her motion, Rosen also stated that Hamilton "failed to appear at his deposition and . . . failed to provide responses to discovery requests." (Doc. 45 at 1 n.1.)

[3] According to the proof of service, on November 13, 2020, the process server served a "Jane Doe" who answered the door at Hamilton's residence but refused to give her name. (Doc. 48.) This appears to be the same Jane Doe upon whom service was effectuated for the initial complaint, to which Hamilton responded. (Doc. 11.)

On January 6, 2021, Rosen applied for an entry of default against Hamilton, in his capacity as the Estate's personal representative. (Doc. 49.) That same day, Rosen filed a notice that she was ready for a final pretrial conference in this case. (Doc. 50.)

On January 7, 2021, the Clerk of Court entered default against Hamilton, in his capacity as the Estate's personal representative. (Doc. 51.)

On January 8, 2021, after reviewing Rosen's notice of trial readiness, the Court stated that it seemed "premature to schedule a final pretrial conference" because Fasttrak was "in the middle of bankruptcy proceedings"; because Hamilton, in his individual capacity, had "taken no action since the withdrawal of his counsel"; and because default had been entered against Hamilton in his capacity as the Estate's personal representative. (Doc. 52.) The Court accordingly ordered each party (with the exception of Fasttrak) to file a notice by January 22, 2021 advising the Court how to proceed. (*Id.*)

On January 21, 2021, Rosen filed her notice, proposing that "the damages assessed at trial can be assessed jointly and severally against Defendant Hamilton in both his individual capacity and as personal representative for the Estate of Renee Gumble, for which there is a default judgment." (Doc. 53.) Hamilton (acting in his individual capacity) did not, in contrast, file a notice by the January 22, 2021 deadline.

On January 29, 2021, the Court ordered the Clerk to enter default against Hamilton in both his individual capacity and in his capacity as the Estate's personal representative. (Doc. 55.) That same day, the Clerk did so. (Doc. 56.)

On March 10, 2021, Rosen filed the pending motion for default judgment. (Doc. 57.)

**DISCUSSION**

I. <u>Effect Of Pending Bankruptcy Proceedings</u>

As noted, Fasttrak has filed for bankruptcy. (Doc. 42.) Thus, this proceeding is automatically stayed against Fasttrak under 11 U.S.C. § 362(a)(1).

The bankruptcy stay does not, in contrast, extend to Hamilton, individually or as the Estate's representative. The bankruptcy petition lists only one debtor, Fasttrak. (Doc. 42-1.) "As a general rule, the automatic stay of section 362(a) protects only the debtor,

- 4 -

property of the debtor or property of the estate. It does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (citation omitted). In the absence of a bankruptcy court order extending the automatic stay to Fasttrak's co-defendants in this action, this case will go forward as to Hamilton, individually and as the Estate's representative. *Boucher v. Shaw*, 572 F.3d 1087, 1093 (9th Cir. 2009) ("We have never addressed the question whether a company's bankruptcy affects the liability of its individual managers [for wage claims] under the FLSA. But our case law regarding guarantors, sureties and other non-debtor parties who are liable for the debts of the debtor leaves no doubt about the answer: the [company's] bankruptcy has no effect on the claims against the individual managers at issue here. . . . [T]he managers are independently liable under the FLSA, and the automatic stay has no effect on that liability.").

## II. Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id*. "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

…

III. <u>The First *Eitel* Factor—Possible Prejudice to Plaintiff</u>

The first *Eitel* factor weighs in favor of default judgment. Hamilton previously hired counsel to represent himself, Fasttrak, and the Estate, which was improperly named until Rosen amended her complaint, identifying Hamilton as the Estate's personal representative. (Doc. 47.) Hamilton, individually and as the Estate's personal representative, has not participated in this action, in any way, since his counsel withdrew in August 2020. (Doc. 55.) If the motion for default judgment were denied, Rosen would be without other recourse for recovery. *Knapper v. Stellar Recovery, Inc*., 2018 WL 1899069, *1 (D. Ariz. 2018) ("Defendant has ceased operations, and its representative, John Schenk, stated at the hearing that he will not hire new counsel or mount any kind of defense in this case. If Plaintiff's motion is not granted, Plaintiff will be without other recourse for recovery.") (citation omitted); *J & J Sports Prods. Inc. v. Cervantes*, 2018 WL 3702298, *2 (E.D. Cal. 2018) (finding that where Defendant "failed to defend the action and clearly abandoned the litigation through failing to respond to the Court's orders," "Plaintiff would be prejudiced if default judgment is not granted").

IV. <u>The Fifth *Eitel* Factor—Possible Disputes Concerning Material Facts</u>

The fifth factor weigh in favor of default judgment or is neutral. Due to Hamilton's failure to participate in this case, there is no dispute over material facts (except as to damages).

V. <u>The Sixth *Eitel* Factor—Whether Default Was Due To Excusable Neglect</u>

The sixth factor weigh in favor of default judgment or is neutral. Hamilton was served with the FAC. (Doc. 48.) According to Rosen's motion for leave to file the FAC, Hamilton has refused to participate in this litigation, didn't show up for his noticed deposition, and hasn't otherwise participated in the discovery process. (Doc. 45 at 1 n.1, 5.) "Given Defendant's early participation in the matter, the possibility of excusable neglect is remote." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

…

## VI. The Seventh *Eitel* Factor—Policy Favoring A Decision On The Merits

The seventh factor generally weighs against default judgment, given that cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who otherwise could cause the justice system to grind to a halt. Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court." Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 55, at 123-24 (2021) (footnote omitted).

## VII. The Fourth *Eitel* Factor—The Amount Of Money At Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Here, Rosen seeks a total of $113,047.46, composed of $93,999.96 in damages (which represents the trebled sum of the $20,933.32 in unpaid wages and $10,400.00 in unpaid expenses identified in the FAC), $18,500.00 in attorneys' fees, and $547.50 in costs. (Doc. 57 at 2.)

As discussed in more detail below, Rosen's claim for damages arises under A.R.S. § 23-355, which provides in relevant part that an "employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." The Court possesses wide discretion in determining whether to award treble damages under § 23-355. *Apache E., Inc. v. Wiegand*, 580 P.2d 769, 773 (Ariz. Ct. App. 1978) ("We further believe it was the intent of the legislature, when it used the term 'may,' to leave discretion in the courts in determining when this penalty should be imposed."). Where the Court has the discretion to reduce a monetary award to a less substantial sum, the fourth *Eitel* factor becomes neutral. *Twitch Interactive, Inc. v. Johnson*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

…

VIII. The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint. "These two factors are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (alterations in original) (internal quotation marks omitted). "Of all the Eitel factors, courts often consider the second and third factors to be 'the most important.'" *Id*.

Here, it is important to be precise about the nature of the claim on which Rosen is seeking default judgment. The FAC contains a hodgepodge of citations to statutory provisions that may give rise to wage-related claims under state and federal law. For example, the FAC repeatedly cites A.R.S. § 23-355 and asserts, in the final paragraph of Count One, that Rosen "is entitled to recover treble damages pursuant to A.R.S. § 23-355." (Doc. 47 ¶ 38.) This suggests that Rosen is asserting a claim under the Arizona Wage Act ("AWA") premised on the failure to pay any wages. *See generally Rose v. Wildflower Bread Co.*, 2011 WL 196842, *1 (D. Ariz. 2011) ("The Arizona Wage Act . . . require[s] that employees receive their 'wages' in a timely fashion . . . [and] provides for treble damages, A.R.S. § 23–355 . . . ."). However, the FAC also alleges a "Violation of FLSA," and the FAC's prayer for relief cites 29 U.S.C. § 216(b). (Doc. 47 at 4.) This suggests that Rosen also may be asserting a claim under the Fair Labor Standards Act ("FLSA"), which authorizes a claim for the failure to pay certain types of wages—specifically, "unpaid minimum wages" and/or "unpaid overtime compensation." *See* 29 U.S.C. § 216(b). Finally, the FAC's prayer for relief also cites A.R.S. § 23-362. (Doc. 47.) That provision is part of the Arizona Minimum Wage Act ("AMWA"), which authorizes a claim against "[a]ny employer who fails to pay the [minimum] wages or earned paid sick time required under this article" and further authorizes a penalty "equal to twice the underpaid [minimum] wages or earned paid sick time." *See* A.R.S. § 23-364(G).

With this backdrop in mind, it is notable that Rosen's motion for default judgment only invokes A.R.S. § 23-355, the enforcement provision of AMA, and doesn't invoke the

FLSA or AMWA. (Doc. 57 at 2 ["Plaintiff is entitled to judgment based on treble the unpaid wages and expenses plead in her complaint, or $93,999.96, pursuant to A.R.S. § 23-355."].) Accordingly, the Court construes the motion as seeking a default judgment only to the extent Rosen is asserting an AMA claim against Hamilton (both in his individual capacity and in his capacity as personal representative of the Estate) under § 23-355.

The term "employer" is defined much more narrowly under AWA than it is under the FLSA or AMWA. Under AWA, an employer is defined by statute as "any individual, partnership, association, joint stock company, trust or corporation, the administrator or executor of the estate of a deceased individual or the receiver, trustee or successor of any of such persons employing any person." A.R.S. § 23-350(3). This statutory definition does not, in other words, authorize individual liability against the owners, officers, and directors of a corporate employer in a case where the claim is for the employer's wholesale failure to pay wages. *Channel v. Home Mortg., Inc.*, 2005 WL 8160525, *5 (D. Ariz. 2005) ("There is nothing in this language suggesting that where an 'employer' is a corporation, the definition is intended to encompass both the corporation and individual employees within the corporation authorized to set an employee's hours and pay wages. . . . Plaintiffs do not argue that they were employed by or entered into an employment contract with any entity other than HMI, the corporation."); *id.* at * 14 ("The Court concludes that Arizona courts would interpret the term 'employer' in A.R.S. § 23-355 to include a corporation, but not officers or agents of the corporation.").

In contrast, for purposes of an AMWA claim (*i.e.,* failure to pay minimum wages), the term "employer" is more broadly defined to include "any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, [and] *individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee*." *See* A.R.S. § 23-362(B) (emphasis added). Similarly, under the FLSA, the definition of the term "employer" includes the phrase "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). Thus, under the FLSA and AMWA, corporate

"managers [can be] individually liable for unpaid wages." *Boucher*, 572 F.3d at 1090-91. *See also Baker v. D.A.R.A. II, Inc.*, 2008 WL 191995, *8 (D. Ariz. 2008) ("In view of Dara Wintersteen's position as a corporate officer in DARA II, Plaintiff has created a *prima facie* case that Dara Wintersteen was an employer for FLSA purposes.").

These principles doom Rosen's AMA claim against Hamilton. The FAC specifically alleges that Fasttrak was Rosen's employer and that the employment relationship was memorialized in a written employment contract between Fasttrak and Rosen. (Doc. 47 ¶¶ 9-10, 12, 14.) Although the FAC also alleges that Hamilton "exercised managerial responsibility and substantial control over the terms and work conditions of the Company's employees" (*id.* ¶ 11), such allegations only bear on whether Hamilton might be considered an "employer" for purposes of an FLSA or AMWA claim by Rosen (because he "acted directly or indirectly in the interest of" the true employer, Fasttrak, "in relation to" Rosen). They are not, in contrast, sufficient to trigger individual liability against Hamilton (or Gumble) for Fasttrak's violation of A.R.S. § 23-355, which arose from a wholesale failure to pay Rosen's wages.

IX. <u>Balancing The Factors</u>

Having reviewed Rosen's motion and considered the *Eitel* factors as a whole, the Court concludes that Rosen is not entitled to default judgment. The Court will, however, permit Rosen to file a renewed motion for default judgment if she so chooses. Any such motion must identify, with clarity, the ground(s) on which Rosen is seeking judgment, identify the elements of each proffered claim and include an explanation of why all elements are satisfied, and be supported by evidence sufficient to support any calculation of damages. If Rosen fails to file a renewed motion within 21 days of the issuance of this order, the Court will dismiss Hamilton as a defendant (both in his individual capacity and in his capacity as personal representative of the Estate). *See, e.g.*, *Harbaugh v. Pac. Cap. Enters. LLC*, 2020 WL 4530460 (D. Ariz. 2020); *AllChem Performance Prod. Inc. v. Aqualine Warehouse LLC,* 2013 WL 4478910 (D. Ariz. 2013); *Phoenix Revitalization Corp. v. Marabrisa Condominiums,* 2009 WL 3823768 (D. Ariz. 2009).

Accordingly,

**IT IS ORDERED** that Rosen's motion for default judgment (Doc. 57) is **denied**.

**IT IS FURTHER ORDERED** that Rosen may file a renewed motion for default judgment within 21 days of this Order. If Rosen does not file a renewed motion for default judgment within 21 days, the Clerk shall dismiss Hamilton as a defendant (both in his individual capacity and in his capacity as personal representative of the Estate).

Dated this 15th day of July, 2021.

Dominic W. Lanza
United States District Judge